IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ROBERT B. YOE, PAUL MICHAEL YOE,
GLENDA STUART, JEANNINE SHOUP,
JOY MAYNARD, JEFFREY S. YOE, and
JAMES D. YOE,**

      Plaintiffs,

v.                                                         CIVIL ACTION NO. 3:13-CV-173
                                                              (JUDGE GROH)

**BRANCH BANKING AND TRUST
COMPANY, a North Carolina corporation,**

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT BRANCH BANKING AND TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Currently pending before the Court is Defendant Branch Banking and Trust Company's ("BB&T") Motion to Dismiss Plaintiffs' Complaint filed on December 24, 2013. On January 10, 2014, Plaintiffs filed their Response. On January 21, 2014, Defendant filed its Reply. Therefore, the motion has been fully briefed and is ripe for this Court's review. For the following reasons, the Court **GRANTS** Defendant BB&T's Motion to Dismiss Plaintiffs' Complaint [Doc. 5].

## I. BACKGROUND

Plaintiffs are the residuary heirs and only remaining beneficiaries of the estate of Harry W. Yoe. Plaintiffs allege the following facts in their Complaint. On July 14, 2003, Harry W. Yoe died testate. At the time of his death, he was the sole owner of approximately 336 acres of undeveloped farmland consisting of three tax parcels, parcel

18.1, parcel 18.2, and parcel 18.3 (collectively referred to as the "Yoe Farm"). Pursuant to Harry W. Yoe's Last Will and Testament, he directed his personal representative to sell and liquidate the Yoe Farm to the following beneficiaries: Robert W. Yoe, Paul Michael Yoe, Glenda C. Stuart, James D. Yoe, Jeannine E. Yoe, Joy Yoe Maynard, and Jeffrey S. Yoe ("beneficiaries"). His will named Robert S. Hill, Jr. as his executor.

On July 16, 2003, Plaintiffs allege Executor Hill visited the Fiduciary Office in the Berkeley County court house and attempted to have BB&T appointed as co-executors of the estate. When he was unable to do so, Executor Hill signed as the official executor of the estate. On July 21, 2003, Executor Hill entered into a "Schedule of Fees" with BB&T wherein Executor Hill designated BB&T to act as an agent for the estate services and to assist in administering the Yoe Estate. In the agreement, BB&T identified itself as a "Corporate Fiduciary," "co-executor," "co-fiduciary," and an "agent" of the estate. Plaintiffs allege that during a meeting with them and Executor Hill, Stephen Grove, a BB&T employee, represented that the Schedule of Fees established BB&T as a co-executor.

In July 2003, the Schedule of Fees estimated that the value of the probate estate was $3,095,359, and BB&T was projected to receive a fee of $77,384 in 2005. The Schedule of Fees also estimated that the sales price of the Yoe Farm should be $5,000,000, and BB&T should receive a $50,000 fee in 2007. Plaintiffs allege that they and Executor Hill believed BB&T was acting as a "co-executor" of the Yoe Estate at all times.

In September 2003, Appraiser C. Michael Williams appraised the Yoe Farm at

$3,000,000 as of July 14, 2003. In late 2003 and early 2004, there were multiple offers to purchase the Yoe Farm. On December 31, 2003, Dan Ryan Builders, Inc. tentatively agreed to purchase the property for $4,536,000. However, Dan Ryan Builders, Inc. later withdrew this offer. At some point prior to March 2, 2004, Herbert Jonkers offered to purchase the property. On March 2, 2004, Executor Hill, relying on BB&T's previous assurances that Mr. Jonkers was a sound borrower, accepted Mr. Jonkers' offer–the highest offer–to purchase the property at $5,100,000. Per the terms of the agreement, Yoe Properties, LLC (Mr. Jonkers' soon-to-be-created company) agreed to pay cash in an amount necessary for the Yoe Estate to pay all estate taxes due and owing, with the balance payable by a promissory note and secured by a deed of trust.

On March 26, 2004, the C&L Group, Inc. appraised the Yoe Farm at $5,050,000. BB&T agreed to loan Yoe Properties, LLC the estate tax on the property. However, BB&T "low-balled" the amount of the estate tax by using the $3,000,000 appraisal of the land. On April 12, 2004, Executor Hill sold the Yoe Farm to Yoe Properties, LLC for $5,100,000. Yoe Properties, LLC financed the cash portion of the purchase price with a loan from BB&T for $1,100,000. Yoe Properties, LLC used this loan to pay the federal and state estate taxes. The agreement provided that the balance of the purchase price was seller financed by the Yoe Estate through a promissory note for $4,200,000. Additionally, Yoe Properties, LLC, BB&T, and Executor Hill entered into a "Priority Agreement" providing BB&T with a first deed of trust lien position on parcel 18.1 of the Yoe Farm and a shared first lien position on parcels 18.2 and 18.3. The Yoe Estate had a second lien position on parcel 18.1 and a shared first lien position on parcels 18.2 and 18.3.

Plaintiffs allege that BB&T's loan to Yoe Properties, LLC was part of its plan to acquire other non-creditworthy Herbert Jonkers' entities, such as Sheridan, LLC and Old Standard, LLC. Plaintiffs contend that by January 1, 2005, BB&T had loaned Mr. Jonkers and his various entities in excess of $12,000,000.

In early 2005, Yoe Properties, LLC requested BB&T grant them a six-month extension to make their first payment. On June 8, 2005, Mr. Grove of BB&T refused to extend the payment date for the first note installment of $1,700,000 on October 12, 2005. According to Plaintiffs, Mr. Grove stated that this decision was in the best interests of the beneficiaries.

On June 13, 2005, Yoe Properties, LLC borrowed $2,500,000 from K. Hovnanian Homes, secured by a Deed of Trust against the Yoe Farm. Plaintiffs allege this money was applied to a previous loan between BB&T and Herbert Jonkers rather than applied to the debt on the Yoe Farm loan.

A few months later, BB&T agreed to lend an additional $1,700,000 to Yoe Properties, LLC if Executor Hill would sign a Consent and Subordination Agreement agreeing to subordinate its interests to BB&T's interest in the Yoe Farm. On October 11, 2005, Executor Hill executed a Consent and Subordination Agreement wherein the estate subordinated its Second Deed of Trust to BB&T's Fourth Deed of Trust. Yoe Properties, LLC utilized the loan proceeds to make the initial payment of $1,700,000 to the Yoe Estate. BB&T distributed $942,329.02 to Plaintiffs, and the remaining funds were divided among BB&T and Executor Hill per the Schedule of Fees.

On January 4, 2007, $270,000 was distributed to Robert Yoe. On May 2, 2006, October 18, 2006, and April 30, 2007, BB&T made a $75,000 distribution to Plaintiffs as

4

a result of interest payments made to the Yoe Estate by Yoe Properties, LLC. Plaintiffs allege these payments were made to mislead them into thinking that the Yoe Estate was being properly administered by BB&T and Executor Hill. After October 2007, no more interest payments were made, and Yoe Properties, LLC still owed $2,500,000 to the Yoe Estate.

On April 15, 2008, BB&T representatives met with Robert Yoe and summarized Executor Hill's decision in signing the priority and subordination agreement. They also allegedly explained that foreclosing on the property at this time would be a detriment to the Yoe Estate. On June 9, 2009, Plaintiffs contend that BB&T discouraged them from filing a lawsuit because it was supposedly not in the best interests of the Yoe Estate. On December 3, 2010, Plaintiffs in this action filed a lawsuit in the Circuit Court of Berkeley County, West Virginia against BB&T, Herbert Jonkers, Yoe Properties, LLC, and Executor Hill. On April 7, 2011, the Circuit Court of Berkeley County granted BB&T's Motion to Dismiss finding that BB&T owed no fiduciary obligations or duties to the beneficiaries, that the beneficiaries were not third-party beneficiaries as defined under West Virginia law, and that the statute of limitations had run on the beneficiaries' negligence claims against BB&T.

On December 2, 2013, Plaintiffs filed their Complaint in this Court against Defendant BB&T alleging violations of 18 U.S.C. § 1962(c) and fraud. On December 24, 2013, Defendant filed its motion to dismiss Plaintiffs' Complaint.

## II. RULE 12(b)(6) STANDARD

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th

Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added)). Legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure, and only allegations of fact are entitled to the presumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

### III. ANALYSIS

Defendant BB&T moves the Court to dismiss the two counts asserted by Plaintiffs against BB&T in the Complaint. The Court analyzes each count below.

**1. Plaintiffs' Count I: Civil Rico Claim**

Plaintiffs contend that BB&T violated 18 U.S.C. § 1962, commonly known as the Racketeer Influenced and Corrupt Organizations Act or RICO. Compl. ¶¶ 136-145. Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason

6

of a violation of section 1962 of this chapter," could maintain a private action for treble damages and attorneys' fees. "RICO . . . does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010) (internal quotation marks and citation omitted).

In this case, the civil RICO claim is based on alleged violations of § 1962(c). This subsection provides that it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." Id.

### a. "Person" and "Enterprise" Under RICO

First, a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An enterprise includes "any individual, partnership, corporation, association, or other legal entity . . . ." 18 U.S.C. § 1961(4). The alleged "person" who violated § 1962(c) must be somewhat "distinct" from the RICO enterprise. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 162 (2001); Busby v. Crown Supply, Inc., 896 F.2d 833, 840 (4th Cir. 1990) (holding that "the alleged 'person' who violates § 1962(c) must be different from the 'enterprise'").

Plaintiffs allege that "BB&T constitutes an enterprise engaged in or the activities of which affect interstate commerce for purposes of 18 U.S.C. § 1962(c)." Compl. ¶ 137. However, Plaintiffs do not allege any "person" or "persons" to satisfy the "person requirement" under 18 U.S.C. § 1962(c). Indeed, Plaintiffs' Complaint does not name

7

any individual person or persons as RICO defendants.  See Cedric Kushner Promotions, Ltd., 533 U.S. at 162 (agreeing that § 1962(c) requires "some distinctness between the RICO defendant and the RICO enterprise").  Accordingly, Plaintiffs failed to allege a "person" that is distinct from the "enterprise" as required by 18 U.S.C. § 1962(c).

### b. "Pattern of Racketeering Activity" Under RICO

Second, § 1962(c) requires that the RICO defendants engaged in a "pattern of racketeering activity."  Pursuant to 18 U.S.C. § 1961(1), "racketeering activity" is defined as any act indictable under certain provisions of the federal criminal code, including 18 U.S.C. § 1341(mail fraud) and 18 U.S.C. § 1343 (wire fraud).

To constitute a pattern of racketeering activity, there must be "at least two acts of racketeering activity, one of which occurred after the effective date of [the RICO statute] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  A pattern is "not formed by sporadic activity."  H.J. Inc. v. Nw. Bell Tele. Co.. 492 U.S. 229, 239 (1989) (internal quotation marks omitted).  Instead, the term pattern "requires the showing of a relationship between the predicates and of the threat of continuing activity."  Id. (internal quotation marks omitted).  Plaintiffs can satisfy the continuity prong in two ways: (1) "by showing a defined series of related and repeated predicate criminal acts over a substantial period ('closed end continuity')" or (2) "by showing past conduct that by its nature is open-ended and threatens future criminal activity."  Huntingdon Life Scis., Inc. v. Rokke, 986 F. Supp. 982, 987 (E.D. Va. 1997) (citing H.J. Inc., 492 U.S. at 241-42).  Plaintiffs can satisfy the relationship prong by alleging predicate acts that "have the same or similar

8

purposes, results, participants, victims or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id.

In the Fourth Circuit, determining the existence of a RICO pattern is "a matter of criminal dimension and degree to be decided on a case-by-case basis." Parcoil Corp. v. NOWSCO Well Serv., Ltd., 887 F.2d 502, 504 (4th Cir. 1989). Therefore, a court may consider several factors including "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." Id.

In this case, Plaintiffs' allegations fail to state a plausible claim for relief under the RICO Act because they do not allege facts sufficient to show that Defendant engaged in a pattern of racketeering activity. Plaintiffs allege that Defendant "repeatedly used or caused their agents to use the mails and wires" to make misrepresentations to Plaintiffs regarding the settlement of the Yoe Estate. However, Plaintiffs' allegations demonstrate a single scheme–not a pattern of racketeering activity. In this matter, the predicate acts alleged were designed to allegedly defraud a small group of victims in connection with a single transaction: the sale of the Yoe Farm. Also, Defendant's allegedly had a single limited goal: to defraud the Yoe Estate. Indeed, the alleged four acts of wire and mail fraud constituted the commission of "multiple preparatory acts aimed at the infliction of a single basic injury" rather than "the commission of a series of independent acts that were distinct criminal ends in themselves." See Brandenburg v. Seidel, 859 F.2d 1179, 1186 (4th Cir. 1988) (finding a pattern of racketeering activity because the scheme to defraud "an enormous group of persons" was riddled with "virtually limitless" transactions and had "no limiting goal whose accomplishment would bring the criminal

activity it spawned to an end"). Here, Plaintiffs allege a closed-ended scheme, which is confined to a finite period of time. They fail to allege predicate illegal acts as Defendant's regular way of doing business. Indeed, the alleged single transaction involved the same players, purpose, and victims. Accordingly, Plaintiffs have failed to allege a "pattern of racketeering activity."

### c. Causation Requirement

Third, BB&T argues that Plaintiffs have also failed to satisfy the causation requirement. A person "injured in his business or property by reason of violation of section 1962" has standing to sue for damages under RICO. 18 U.S.C. § 1964(c). The "direct injury" requires proximate cause, and there must be "some direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). The "*Holmes* Court cautioned against an overly expansive view of proximate cause: "'[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.'" Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc., 18 F.3d 260, 262 (4th Cir. 1994) (quoting Holmes, 503 U.S. at 268).

In this case, Plaintiffs were required to allege facts establishing that the predicate acts of mail fraud and wire fraud proximately caused their injury. See Walters v. McMahen, 684 F.3d 435, 444 (4th Cir. 2012); see also Hemi Group, LLC v. City of N.Y., 559 U.S. 1, 9 (2010) (holding that "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well'"). Plaintiffs failed to address whether their

10

injury was proximately caused by the predicate acts in their response. However, upon reviewing Plaintiffs' Complaint, Plaintiffs did not allege facts establishing the predicate acts of mail fraud and wire fraud proximately caused their injuries.

Plaintiffs are the beneficiaries of an estate. Defendant's alleged predicate acts were directed to and relied upon by the executor of the estate and the estate. The predicate acts allegedly resulted in the financial diminution of the Yoe Farm, real estate that was held by the estate and administered by the executor. The estate, and the executor on behalf of the estate, suffered the direct injury. Therefore, the estate and its executor are the proper plaintiffs, and Plaintiffs, as the beneficiaries of the estate, lack standing under RICO to sue for an injury derivative of the estate's injury. See Firestone v. Galbreath, 976 F.2d 279, 285 (6th Cir. 1992) (holding that "[t]he estate suffered the direct harm; it, not the Family Trust, lost the property. Consequently, the [beneficiaries] lack standing to bring an individual RICO claim").

Accordingly, Plaintiffs' Count One is **DISMISSED** because Plaintiffs have failed to sufficiently allege facts to satisfy the person and enterprise requirement, the "pattern of racketeering" requirement, and the causation requirement under RICO.

**2. Plaintiffs' Count II: Common Law Fraud**

Plaintiffs allege that BB&T committed fraud. Compl. ¶¶ 146-153. BB&T, in its motion to dismiss, argued Plaintiffs' fraud claim is barred by the statute of limitations.

First, Plaintiffs argue that under West Virginia law, a statute of limitations defense should not be ruled upon at the motion to dismiss stage. "When it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." Faircloth v. Nat'l Home

11

Loan Corp., 313 F. Supp. 2d 544, 552 (M.D.N.C. 2003) (dismissing a claim based on a statute of limitations defense); see also Miller v. Pac. Shore Funding, 224 F. Supp. 2d 977, 985 (D. Md. 2002) (stating that "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss"). The Court applies the West Virginia statute of limitations as well as West Virginia law construing it. Wade v. Danek Med., Inc., 182 F.3d 281, 289 (4th Cir. 1999) (holding that district courts should apply the state statute of limitations and any rule "that constituted an integral part of the state statute of limitations").

Under West Virginia law, claims for fraud and misrepresentation are governed by a two-year statute of limitation. W. Va. Code § 55-2-12. Plaintiffs argue that the running of the two-year limitation period was tolled through the operation of the discovery rule. Applying the discovery rule,

> the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Trafalgar House Const., Inc. v. ZMM, Inc., 567 S.E.2d 294, 299-300 (W. Va. 2002). The West Virginia Supreme Court of Appeals stated that "[i]n most cases, the typical plaintiff will 'discover' the existence of a cause of action, and the statute of limitation will begin to run, at the same time that the actionable conduct occurs." Dunn v. Rockwell, 689 S.E.2d 255, 265 (W. Va. 2009).

To determine whether the statute of limitations bars Plaintiffs' cause of action, the

Court applies the five-step analysis set forth in Dunn v. Rockwell.  First, the Court must identify the applicable statute of limitation for the cause of action.  Id. at 265.  In this case, as mentioned above, a two-year statute of limitation governs Plaintiffs' Count II fraud claim.  Second, the Court should identify when the requisite elements of the cause of action occurred.  Id.  Plaintiffs allege various acts of fraud and misrepresentation in Paragraphs 147-149 of their Complaint.  Specifically, Plaintiffs allege that in 2008 BB&T misled Plaintiffs "by having an attorney advise them to postpone legal proceedings" and causing "an attorney to incorrectly advise [Plaintiffs] that K. Hovnanian Homes of West Virginia was in a superior lien position in 2008."  Compl. ¶ 149.  Plaintiffs also allege that BB&T misled them into thinking it was acting for the benefit of the estate with Executor Hill.  Compl. ¶ 147.   Plaintiffs allege the misrepresentations occurred starting in 2003 when BB&T was denied a co-executor status.  However, the fact that Executor Hill was the sole executor was a matter of public record.  Additionally, BB&T, through counsel Rosenberg Martin & Greenberg, LLP, clearly stated its position in its Motion to Dismiss in the Berkeley County Circuit Court action that it was "never appointed as a fiduciary" and was not "recognized as an executor administrator of the estate" and thus had "no duty to Plaintiffs."  Therefore, Plaintiffs would have discovered BB&T's alleged misrepresentation that it was a "co-executor" and acting in the best interests of the estate by January 11, 2011, at the latest.  Last, Plaintiffs allege that BB&T concealed the lien position on the Yoe Farm; however, these were all publicly recorded documents, with the most recent document recorded in June 2008. Compl. ¶ 106.  Additionally, Plaintiffs acknowledged the priority agreements by December 3, 2010 because Plaintiffs made allegations in their Complaint filed in the Circuit Court of

Berkeley County regarding the priority agreements and that the Yoe Estate was not a priority lien holder due to "BB&T's self-serving actions." See [Doc. 5-3].

Third, the Court must determine whether the discovery rule should be applied using the criteria set forth in Syllabus Point 4 of Gaither v. City Hosp., Inc.. Dunn, 689 S.E.2d at 265. Syllabus Point 4 provides:

> In tort actions . . . under the discovery rule the statute of limitations begins to run when the plaintiffs knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Syl. Pt. 4, Gaither, 487 S.E.2d 901. "Where a plaintiff knows of his injury, and the facts surrounding that injury place him on notice of the possible breach of a duty of care, that plaintiff has an affirmative duty to further and fully investigate the facts surrounding that potential breach." McCoy v. Miller, 578 S.E.2d 355, 359 (2003).

In this case, Plaintiffs sued BB&T in the Berkeley County Circuit Court for breach of contractual fiduciary duties and negligence in the administration of the estate on December 3, 2010. The filing of that lawsuit indicates that Plaintiffs knew, or by the exercise of reasonable diligence should have known, that they had been injured. Plaintiffs knew the identity of the entity who owed them a duty to act with due care because they sued BB&T in the Berkeley County Circuit Court case. Finally, Plaintiffs knew or should have known that BB&T's conduct had a causal relation to Plaintiffs' injury. At the latest, Plaintiffs would have discovered BB&T was not acting as a co-executor for the Yoe Estate when BB&T clearly stated such in its motion to dismiss filed January 11, 2011 in the Berkeley County Circuit Court case. Accordingly, applying the

14

discovery rule, the statute of limitations would have began to run on Plaintiffs' claim by January 11, 2011, at the very latest.

The fourth step under Dunn provides that "if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." 689 S.E. 2d 265. Plaintiffs are entitled to the discovery rule, and the statute of limitation for their fraud cause of action began, at the latest, on January 11, 2011. However, Plaintiffs contend that BB&T concealed facts that prevented them from discovering and pursuing their cause of action for fraud. Resp., p. 9-11. Plaintiffs allege in their Complaint that BB&T "concealed" information from them. However, the "newly discovered information" was not concealed as Plaintiffs obtained the documents through discovery in the Berkeley County Circuit Court case. Additionally, the "newly discovered evidence" consisted of matters of public record, such as BB&T's loans to Herbert Jonkers' other entities, the Subordination Agreement, and the official executor of Harry W. Yoe's estate. Therefore, the Court does not find that BB&T fraudulently concealed facts that prevented plaintiff from discovering or pursuing the cause of action. Finally, applying the fifth step, the Court does not find and Plaintiffs do not argue that the statute of limitations period was "arrested by some other tolling doctrine." Id.

In this case, Plaintiffs sued BB&T in the Berkeley County Circuit Court for breach of contractual fiduciary duties and negligence in the administration of the estate on December 3, 2010. The filing of that lawsuit indicates that Plaintiffs knew, or by the exercise of reasonable diligence should have known, that they had been injured. Plaintiffs knew the identity of the entity who owed them a duty to act with due care

because they sued BB&T in the Berkeley County Circuit Court case. Finally, Plaintiffs knew or should have known that BB&T's conduct had a causal relation to Plaintiffs' injury. Additionally, by January 11, 2011, Plaintiffs knew that BB&T did not serve as a co-executor of the Yoe Estate but simply served as Executor Hills' agent. Accordingly, applying the discovery rule, the statute of limitations would have began to run on Plaintiffs' claim by January 11, 2011 at the latest, and at that point Plaintiffs were placed on notice of their possible claim. Plaintiffs filed this lawsuit on December 2, 2013–almost three years from the date the statute of limitations began to run. Therefore, Plaintiffs' Count Two is **DISMISSED** because the two-year statute of limitations bars Plaintiffs' claim.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Complaint.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

**DATED:** February 25, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE